UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60014-SMITH/VALLE

JASON L. GLEICHER,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 19) and Defendant's Motion for Summary Judgment (ECF No. 22) (together, "the Motions"). U.S. District Judge Rodney Smith has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 2).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 23), and the hearing on the Motions,[2] and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

[2] The Court held a hearing on the Motions on August 30, 2022. (ECF No. 30). The transcript of the proceedings, which the undersigned has requested be filed on the docket, is incorporated by reference (hereinafter "Hr'g Tr.").

## I.     PROCEDURAL HISTORY

In April 2019, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability beginning on November 12, 2018.[3] (R. 15).[4] Plaintiff's applications were denied initially and again upon reconsideration. (R. 64-73, 75-83). Thereafter, Plaintiff requested a hearing, which was held on May 6, 2020, before ALJ Jonathan Sprague. (R. 30-63). Plaintiff appeared with counsel and testified at the hearing. (R. 36-57). A Vocational Expert ("VE") also testified. (R. 57-63). On May 19, 2020, the ALJ issued a decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act. (R. 15, 22).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-8); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.    STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also*

---

[3] At the administrative hearing, Plaintiff amended his onset date to May 1, 2019, from an initial onset date of November 12, 2018. *Compare* (R. 31) (Plaintiff's testimony that he worked through April 2019 and was amending his onset date to May 1, 2019), *with* (R. 184) (Disability Report listing November 2018 onset date).

[4] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF Nos. 12, 13).

42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?

   (2) Is the person's impairment severe?
   (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
   (4) Is the person unable to perform his or her former occupation?
   (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

  Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004)*, abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

  At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*,

4

357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III. THE ALJ'S DECISION

On May 19, 2020, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the [Act] from November 12, 2018,[5] through the date of this decision." (R. 15, 22).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 12, 2018, the initial alleged onset date. (R. 17).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: migraines with cyclical vomiting, gastroesophageal disease (GERD), and inflammatory bowel disease. *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. (R. 17-18).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform medium work except that claimant: (i) can never climb ladders, ropes, and scaffolds; and (ii) must avoid concentrated exposure to extreme heat, noise, and hazards. (R. 18).

---

[5] The ALJ's reference to the initial November 2018 onset date rather than the amended May 2019 onset date is immaterial to the ALJ's Decision and Plaintiff does not argue that the ALJ erred on that basis.

Based on this RFC, the ALJ concluded that Plaintiff was able to perform his past relevant work as a technical support specialist. (R. 20). The ALJ alternatively proceeded to Step 5 of the sequential analysis and found that Plaintiff could also perform other jobs in the national economy, such as counter supply worker, laundry worker, and patient transporter, all unskilled jobs with a medium exertional level and an SVP of 2. (R. 21, 60). Thus, the ALJ concluded that Plaintiff is not disabled. *Id*.

## IV.   DISCUSSION

Plaintiff raises two arguments on appeal. First, Plaintiff argues that the ALJ erred in evaluating the persuasiveness of the medical opinion of ARNP Angela Rohrbaugh, who treated Plaintiff for migraines and associated vomiting. (ECF No. 19 at 5-9). Next, Plaintiff challenges the ALJ's consideration of Plaintiff's subjective statements about his symptoms and resulting limitations. *Id*. at 9-12. As discussed below, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence. Accordingly, the ALJ's Decision should be affirmed.

### A. The ALJ Properly Evaluated ARNP Rohrbaugh's Opinion

#### *1. Applicable Law*

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions. 20 C.F.R. § 404.1513(a). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. § 404.1513(a)(2).

6

Relevant here, for medical opinions on claims filed after March 2017, the treating source rule has been eliminated.[6] *Matos v. Comm'r of Soc. Sec.*, No. 21-CV-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."); *Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020).  Under the revised regulations, while a medical source's treatment relationship with a claimant remains a factor to be considered in assessing the persuasiveness of a medical source opinion, the opinion of a treating source is no longer entitled to controlling weight or deferential treatment.  *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4.  Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion is: (i) supported by objective medical evidence and the source's explanation of his opinion; and (ii) consistent with other evidence in the medical record.  20 C.F.R. § 404.1520c(c)(1)-(2).  These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[7]  20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4; *Bonilla,* 2020 WL 9048787, at *4.  Additional factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."

---

[6] For claims filed prior to March 27, 2017, the treating source rule generally required ALJs to give "controlling weight" or "greater weight" to a treating source's opinion absent "good cause." 20 C.F.R. § 404.1527(c).  There is no dispute that the new regulations govern Plaintiff's disability claim.

[7] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. § 404.1520c(c)(1).  "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. § 404.1520c(c)(2).

7

20 C.F.R. § 404.1520c(c)(3)-(5). In addition, although the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *Bonilla,* 2020 WL 9048787, at *5; 20 C.F.R. § 404.1520c(b)(2).

### 2. The ALJ Properly Evaluated ARNP Rohrbaugh's Opinion

The medical records reflect that Nurse Rohrbaugh treated Plaintiff four times between May 2018 and May 2019. (R. 322, 333). On July 9, 2019, the nurse completed a Gastrointestinal Disorders Impairment Questionnaire and a separate Headaches Impairment Questionnaire. (R. 342-47, 350-55) (together, the "Questionnaires"). In the Questionnaires, Nurse Rohrbaugh described Plaintiff's migraine headaches as intense and severe, with associated nausea and vomiting, sensitivity to light, and visual disturbances, and diagnosed Plaintiff with migraines and cyclical vomiting. (R. 342-43, 350-51).

Nurse Rohrbaugh opined that Plaintiff was severely limited as a result of his migraines and vomiting. More specifically, she opined that Plaintiff's symptoms were frequently severe enough to interfere with his attention and concentration. (R. 345, 353). Nurse Rohrbaugh also opined that Plaintiff would have "good days and bad days," and would miss work more than three times per month because of his impairments or treatment. (R. 347, 354-55). She further opined that Plaintiff needed access to a restroom on "short notice," and would need to be away from his workstation for 30 minutes at a time to deal with his nausea and vomiting. (R. 347, 354). The nurse concluded that during a migraine episode, Plaintiff would not be able to perform even basic work activities. (R. 354). Lastly, Nurse Rohrbaugh noted that the symptoms and limitations reflected in her opinion in the Questionnaires existed since January 2013 as to Plaintiff's gastrointestinal issues and since March 2014 as to his migraines. (R. 347, 355).

After reviewing the medical evidence, the ALJ concluded that the opinion of ARNP Rohrbaugh was not persuasive because it was not "consistent with [the nurse's] own medical notes, indicating that the claimant is stable on medications and diet." (R. 20). The ALJ further explained that there were "very few treatment notes and no emergency room or hospital visits, which is not consistent for the degree of disability stated by the treating source and the claimant." *Id*. Plaintiff challenges the ALJ's statement as conclusory, arguing that the ALJ failed to explain the supportability and consistency factors in evaluating Nurse Rohrbaugh's opinion. (ECF No. 19 at 7, 8). These arguments are addressed below.

Upon a review of the record, the undersigned finds that the ALJ adequately addressed the supportability and consistency factors, as required by the applicable regulations governing medical opinion evidence.

On the supportability factor, the ALJ wrote:

> The undersigned finds [Nurse] Rohrbaugh's opinion not persuasive due to not being consistent with her own medical notes, indicating that the claimant is stable on medications and diet. The claimant also has very few treatment notes and no emergency room or hospital visits, which is not consistent for the degree of disability stated by the treating source and the claimant.[8]

(R. 20). As the ALJ correctly stated, Nurse Rohrbaugh's treatment notes are few. In fact, although she may have first treated Plaintiff in 2013/2014, Nurse Rohrbaugh treated Plaintiff only four times between May 2018 and May 2019: May 30, 2018 (R. 333-34); October 23, 2018 (R. 330-32); December 10, 2018 (R. 325-26, 329); and May 29, 2019 (R. 322-24); *see also* (R. 241) (listing January 2013 as date of first visit); (R. 350) (Headache Impairment Questionnaire listing 2014 as date of first treatment). Moreover, the treatment notes confirm the ALJ's conclusion that the

---

[8] This statement also supports the ALJ's assessment of Plaintiff's statements about the intensity and persistence of his symptoms and resulting limitations, which is discussed more fully in Section B, *infra*.

9

nurse's opinion was not supported by her treatment notes. For example, three of the four visits were unrelated to Plaintiff's headaches or associated nausea/vomiting: (i) the May 2018 visit was a follow-up on Plaintiff's abnormal lab results (high cholesterol, vitamin D deficiency, and mildly impaired fasting glucose level) (R. 333); (ii) the December 2018 visit was a scheduled annual physical at which Plaintiff reported no new or acute complaints (R. 325, 332); and (iii) the May 29, 2019 visit was a routine follow-up, previously foreseen since the December 2018 annual visit. (R. 322, 329). Only the October 23, 2018 visit seems to have been precipitated by a severe migraine episode a day earlier, but Plaintiff admitted not taking his medications. (R. 330). Plaintiff was instructed to resume taking his preventive migraine medication as previously prescribed. (R. 332). Accordingly, although Nurse Rohrbaugh's treatment notes reflect Plaintiff's complaints of and treatment for intermittent migraines, they do not support Nurse Rohrbaugh's opinion of disabling limitations due to the migraines. *See e.g.*, (R. 334) (May 30, 2018 note reflecting that migraines and cyclical vomiting are controlled on current medications); (R. 325, 326) (December 2018 note reflecting that Plaintiff is "feeling well and does not have any new or acute complaints" and reports that migraines are controlled on current medications); (R. 322-23) (May 29, 2019 note reflecting routine follow-up and labs, with migraines "intermittently controlled on medications" based on Plaintiff's report of worsening headaches, for which he "is now seeking disability status.").

    Similarly, on the consistency factor, the ALJ wrote:

> In sum, the above residual capacity assessment is supported by the medical and nonmedical evidence, including by the claimant, objective medical findings, observations regarding the claimant's activities of daily living, and the totality of the medical evidence. The claimant's conditions are noted to be well-controlled by claimant['s] treating source. The claimant has not been hospitalized by his condition. Additionally, his EEG was normal. He denied side effects of Topomax.

10

(R. 20). Here again, the ALJ accurately summarized the other evidence in the record as inconsistent with Nurse Rohrbaugh's disabling opinion in the Questionnaires. *See* (R. 19). By way of background, at the May 2019 visit, Nurse Rohrbaugh referred Plaintiff for a neurological evaluation. (R. 323). Subsequently, on October 17, 2019, Plaintiff visited neurologist Dr. Raul Grosz. (R. 19, 357-59). During this visit, Plaintiff reported nearly daily migraines that purportedly interfered with his ability to work. (R. 357). Dr. Grosz increased Plaintiff's migraine medication from 25 mg. to 50 mg., and ordered Plaintiff to undergo an MRI of the brain, EEG, and a nerve conduction study with EMG. (R. 358-59). At Plaintiff's next and final visit to Dr. Grosz on October 31, 2019, Plaintiff reported that his migraines had improved with the increased medication dosage, but had not totally resolved. (R. 361). All diagnostic tests results came back normal, and Dr. Grosz again increased Plaintiff's migraine medication dosage from 50 mg. to 75 mg. (although Plaintiff had referenced that his sister took 125 mg. of the same medication). (R. 357, 361). Thus, Dr. Grosz's treatment notes are inconsistent with Nurse Rohrbaugh's disabling opinion.[9]

The ALJ's Decision also referenced the absence of emergency room visits and hospitalizations as further support for finding that Nurse Rohrbaugh's opinion is inconsistent with

---

[9] Relatedly, the ALJ also appropriately discussed and evaluated the medical opinions of the State Agency consultants Dr. Kerri Aaron and Dr. Gary Smith at the initial and reconsideration levels, finding that the opinions were persuasive. (R. 19-20); *see also* (R. 65-73, 75-82). State Agency consultants are highly qualified specialists who are also experts in the Social Security disability evaluation. *See* 20 C.F.R. § 404.1513a(b)(1); SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017). The undersigned is unpersuaded by Plaintiff's argument challenging the opinions of the State Agency consultants as based on their areas of expertise and their review of evidence through December 2018, prior to Plaintiff's alleged onset date. Rather, the medical evidence after December 2018 consists of the May 2019 visit to the nurse and the two October 2019 visits to the neurologist, all of which are, in any event, consistent with the opinions of the State Agency consultants. Moreover, in reaching his Decision, the ALJ reviewed all the evidence, including the 2019 records and concluded that Plaintiff was not disabled. Lastly, Plaintiff amended his disability onset date to May 2020 during the administrative hearing, indicating that he had worked through April 30, 2019. Thus, Plaintiff has failed to show that the ALJ erred in relying on the opinion of the State Agency consultants.

other evidence in the record. The undersigned agrees. Although Plaintiff is correct that hospitalization is not required to establish a disability, it was Nurse Rohrbaugh who instructed Plaintiff to go to the emergency room if his symptoms worsened. (R. 352). Plaintiff never did, and the medical records consistently reflect Plaintiff's denials of prior hospitalizations.[10] (R. 325, 330, 333); *see also Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (concluding that there was substantial evidence supporting the ALJ's assessment of claimant's symptoms treated with conservative treatments, including prescription medications, physical therapy, diet, and exercise).

Against this backdrop, the undersigned finds that the ALJ properly evaluated ARNP Rohrbaugh's opinion in the Questionnaires, and adequately explained both the supportability and consistency factors. 20 C.F.R. § 404.1520c(c)(1)-(2). In so doing, the ALJ was not required to use any particular language or formulations as long as the ALJ applied the proper legal standards and substantial evidence supports his decision. Such is the case here. *See Gelbart v. Berryhill*, No. 17-CV-61361, 2018 WL 4573145, at *3 (S.D. Fla. Sept. 25, 2018) (concluding that, although regulatory factors were not specifically enumerated and discussed by name, the evaluation was evident in the ALJ's analysis). Moreover, the ALJ was not required to discuss every piece of evidence or articulate "good cause" to discount the medical opinions. Here, the ALJ did what the regulations required: he articulated the supportability and consistency of the nurse's medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Matos*, 2022 WL 97144, at *4.

---

[10] Further detracting from the persuasiveness of Nurse Rohrbaugh's opinion is her unsupported statement in the Questionnaires that Plaintiff's gastrointestinal and migraine symptoms relate back to 2013 and 2014. (R. 347, 355). There is no evidence in the record to support such a sweeping assertion. In addition, Nurse Rohrbaugh inconsistently states in the Headache Questionnaire that Plaintiff's nausea and vomiting is controlled with medication. (R. 353).

Ultimately, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel,* 631 F.3d at 1178 (citation omitted). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth,* 703 F.2d at 1239. Thus, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards in evaluating ARNP Rohrbaugh's opinion.

**B.     The ALJ Properly Assessed Plaintiff's Subjective Symptoms**

Plaintiff next argues that the ALJ did not properly consider Plaintiff's subjective symptoms. (ECF No. 19 at 10-13). In considering a claimant's symptoms, the ALJ must follow a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec. Admin., Comm'r,* 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p). "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities." *Id*. An ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [his] symptoms affect [him]. [A claimant's] symptoms, including pain, will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to

13

symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence." 20 C.F.R. § 404.1529(c)(4). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Whitmore v. Soc. Sec. Admin., Comm'r*, 855 F. App'x 641, 643 (11th Cir. May 17, 2021) (citation omitted). "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* Nonetheless, courts will not disturb a clearly articulated finding about subjective complaints that is "supported by substantial evidence." *Id.* (citation omitted); *Matos*, 2022 WL 97144, at *7 (same).

Here, after referencing the proper legal standards (*i.e.*, 20 C.F.R. § 404.1529 and SSR 16-3p) and discussing Plaintiff's testimony regarding his impairments, medications, and activities of daily living, *see* (R. 18-20), the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his impairments and symptoms were not entirely consistent with the medical evidence and other evidence in the record, for the reasons discussed in the ALJ's Decision. (R. 18). The ALJ summarized the evidence as follows:

> As for the claimant's statements about the intensity persistence, and limiting effects of his symptoms, they are inconsistent with the evidence of record. From May 30, 2018, through May 29, 2019, [ANRP Angela Rohrbaugh] treated the claimant. (Exh. 1F). On May 30, 2018, the claimant was assessed that his migraine headaches were controlled with medication. His GERD was controlled with diet. On December 10, 2018, the claimant reported that he was overall feeling well. The claimant denied headaches and abdominal pain as well. His physical examination was within normal limits[.] The claimant was assessed that his migraine headache was controlled on current medication and his cyclic vomiting on Reglan. On May 29th, 2019, the claimant was seen for migraines. The claimant reported taking medication as prescribed[.] The claimant stated that he experiences migraines every day shortly after waking up and lasting 2 hours on average and needs to take his Reglan for nausea, find a quiet dark room, and occasionally have a warm bath to relieve his symptoms[.] He was cooperative with the examination. His cognitive functioning was intact.

\* \* \*

> [T]he claimant's objective evidence in medical evidence [sic] is not consistent with his allegations, as the claimant's conditions are noted to be well controlled by claimant's treating source. The claimant has not been hospitalized by his condition. Additionally, his EEG was normal. He denied side effects on Topomax.

(R. 19, 20). Based on these records, which were previously discussed in Section A, *supra*, the undersigned finds that the ALJ properly evaluated Plaintiff's symptoms. As more fully discussed above, neither Nurse Rohrbaugh's nor Dr. Grosz's treatment notes support Plaintiff's statements about the intensity of his migraines and resulting functional limitations.[11] Here, the ALJ properly considered the record as a whole, including Plaintiff's treatment history, his statements to medical providers that his migraines were well-controlled with medication, and his activities of daily living. Accordingly, the ALJ clearly articulated his evaluation of Plaintiff's subjective complaints.

Lastly, Plaintiff argues that the ALJ failed to consider Plaintiff's "honorable work history." (ECF No. 19 at 11-12). Although the ALJ's Decision did not reference Plaintiff's work history, Plaintiff testified about his 20-year employment history in IT support and his recent unsuccessful attempt to work, which the ALJ considered. (R. 17, 38). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his Decision, as long as the ALJ's Decision is not a broad rejection of the evidence. *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 921 (11th Cir. 2018) (citations and quotations omitted); *see also Whitmore*, 855 F. App'x 643-44 (concluding that there was sufficient evidence to support ALJ's discounting of claimant's subjective complaints

---

[11] The undersigned is also unpersuaded by Plaintiff's argument relying on case law for the proposition that migraine headaches do not cause abnormalities on clinical examination or objective diagnostic testing. *See generally*, (ECF No 19 at 7-8). Although Plaintiff is correct that there is no objective testing to measure the severity of migraines, even for subjective conditions like migraines, it is still reasonable to expect objective medical evidence of an inability to work. *Creel v. Wachovia Corp.*, No. 08-10961, 2009 WL 179584, at *9 (11th Cir. Jan. 27, 2009). Here, as discussed above, Plaintiff's allegations of disabling migraines are unsupported by the medical record where Plaintiff's conditions are noted to be well controlled with medication, *see, e.g.*, (R. 324, 325, 353), and Plaintiff worked several months after an initial onset date.

15

of pain); *Matos*, 2022 WL 97144, at *7 (finding that substantial evidence supported the ALJ's evaluation of claimant's subjective complaints).

Against this factual and legal backdrop, the undersigned finds that substantial evidence supports the ALJ's assessment of Plaintiff's subjective symptoms, limitations, and work history in determining Plaintiff's RFC, and the ALJ applied the proper legal standards. The ALJ's Decision should therefore be affirmed.

## V.     RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 22) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on September 2, 2022.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Rodney Smith
    All Counsel of Record